UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RECEIVED
AUG 03 2018
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Isabella Nartey
re: Estate of Millicent Nartey
P.O. Box 1184
Chicago Heights, IL 60411,

Plaintiff(s),

vs.

Franciscan Health (hospital)
20201 South Crawford Ave
Olympia Fields, IL 60461,

Defendant(s).

1:18-cv-05327
Judge Sharon Johnson Coleman
Magistrate Judge Sidney I. Schenkier

## COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS

*This form complaint is designed to help you, as a* **pro se** *plaintiff, state your case in a clear manner. Please read the directions and the numbered paragraphs carefully. Some paragraphs may not apply to you. You may cross out paragraphs that do not apply to you. All references to "plaintiff" and "defendant" are stated in the singular but will apply to more than one plaintiff or defendant if that is the nature of the case.*

1. This is a claim for violation of plaintiff's civil rights as protected by the Constitution and laws of the United States under 42 U.S.C. §§ 1983, 1985, and 1986.

2. The court has jurisdiction under 28 U.S.C. §§ 1343 and 1367.

3. Plaintiff's full name is ISABELLA MARY NARTEY.

*If there are additional plaintiffs, fill in the above information as to the first-named plaintiff and complete the information for each additional plaintiff on an extra sheet.*

1

4. Defendant, __FRANCISCAN HEALTH_____, is
   (name, badge number if known)

   ☐ an officer or official employed by _____;
   (department or agency of government)
   _____or

   ☒ an individual not employed by a governmental entity.

*If there are additional defendants, fill in the above information as to the first-named defendant and complete the information for each additional defendant on an extra sheet.*

5. The municipality, township or county under whose authority defendant officer or official acted is __Cook County of Illinois__. As to plaintiff's federal constitutional claims, the municipality, township or county is a defendant only if custom or policy allegations are made at paragraph 7 below.

6. On or about __8/5/2016__, at approximately __6:00__ ☐ a.m. ☒ p.m.
   (month, day, year)
   plaintiff was present in the municipality (or unincorporated area) of __Olympia Fields__
   _____, in the County of __Cook__,
   State of Illinois, at __20201 South Crawford Ave Olympia Fields, IL 60461__
   (identify location as precisely as possible)

   when defendant violated plaintiff's civil rights as follows *(Place X in each box that applies)*:

   ☐ arrested or seized plaintiff without probable cause to believe that plaintiff had committed, was committing or was about to commit a crime;
   ☐ searched plaintiff or his property without a warrant and without reasonable cause;
   ☐ used excessive force upon plaintiff;
   ☐ failed to intervene to protect plaintiff from violation of plaintiff's civil rights by one or more other defendants;
   ☒ failed to provide plaintiff with needed medical care;
   ☐ conspired together to violate one or more of plaintiff's civil rights;
   ☒ Other: __failed to comply with several federal statutes regarding patient care & hospital transfer which resulted in patient paralysis & death, congestive heart failure__

2

_____.

7. Defendant officer or official acted pursuant to a custom or policy of defendant municipality, county or township, which custom or policy is the following: (**Leave blank if no custom or policy is alleged**): ___See answer to #10_____

_____

_____

_____.

8. Plaintiff was charged with one or more crimes, specifically:

___none_____

_____

_____

_____

9. (*Place an X in the box that applies. If none applies, you may describe the criminal proceedings under "Other"*) The criminal proceedings

☐ are still pending.

☐ were terminated in favor of plaintiff in a manner indicating plaintiff was innocent.[1]

☐ Plaintiff was found guilty of one or more charges because defendant deprived me of a fair trial as follows_____

_____.

☒ Other: ___no criminal proceedings (n/a)_____.

_____

[1] Examples of termination in favor of the plaintiff in a manner indicating plaintiff was innocent may include a judgment of not guilty, reversal of a conviction on direct appeal, expungement of the conviction, a voluntary dismissal (SOL) by the prosecutor, or a *nolle prosequi* order.

3

10. Plaintiff further alleges as follows: (*Describe what happened that you believe supports your claims. To the extent possible, be specific as to your own actions and the actions of each defendant.*)

Please see the 5 pages attached detailing each violation of the 3 known federal statutes that were abused or violated during Millicent Narkey's care. Franciscan Health admitted Millicent Narkey (1/12/55) for low potassium levels, "altered mental state" & "hypertensive emergency." ICU records state Millicent was at high risk for rapid clinical deterioration & high stroke risk. Franciscan Health violated EMTALA laws 10 different ways (see attached) connected to Millicent's diagnosis, care, or transfer failure. Franciscan Health also violated U.S. Federal Statute regarding ① Discharge Planning & Condition of Participation (42 CFR 482.83); ② False Statements relating to healthcare matters (18 US code 1035) ③ Patient's Right to Translator & Reasonable Accommodations for language barrier (Title VI of the Civil Rights Act of 1964). Again please see attached for further details. Thank you.

11. Defendant acted knowingly, intentionally, willfully and maliciously.

12. As a result of defendant's conduct, plaintiff was injured as follows:

reduced consciousness & speech abilities
paralysis due to lack of oxygen to the brain (as a result of failure to transfer)
congestive heart failure (failure to transfer resulted in denial of life-saving care available in the region)
death per 8/16/16 brain death test at Franciscan Health

13. Plaintiff asks that the case be tried by a jury. ☒ Yes ☐ No

4

14. Plaintiff also claims violation of rights that may be protected by the laws of Illinois, such as false arrest, assault, battery, false imprisonment, malicious prosecution, conspiracy, and/or any other claim that may be supported by the allegations of this complaint.

   **WHEREFORE,** plaintiff asks for the following relief:

   A. Damages to compensate for all bodily harm, emotional harm, pain and suffering, loss of income, loss of enjoyment of life, property damage and any other injuries inflicted by defendant;

   B. ☒ *(Place X in box if you are seeking punitive damages.)* Punitive damages against the individual defendant; and

   C. Such injunctive, declaratory, or other relief as may be appropriate, including attorney's fees and reasonable expenses as authorized by 42 U.S.C. § 1988.

   Plaintiff's signature: _Isabella [signature]_

   Plaintiff's name *(print clearly or type)*: ISABELLA M. NARTEY

   Plaintiff's mailing address: P.O. Box 1184

   City CHICAGO HEIGHTS  State IL  ZIP 60411

   Plaintiff's telephone number: (312) 725-3534

   Plaintiff's email address *(if you prefer to be contacted by email)*: ourmillicent@gmail.com

15. Plaintiff has previously filed a case in this district. ☐ Yes ☒ No

   *If yes, please list the cases below.*

***Any additional plaintiffs must sign the complaint and provide the same information as the first plaintiff. An additional signature page may be added.***

5

United States District Court for the Northern District of Illinois: Eastern Division
Attachment for extended response to item 10 on filing for Nartey vs. Franciscan Health
Plaintiff: Isabella M. Nartey – Phone: 312.725.3534 – Email: ourmillicent@gmail.com

**The violations of the federal statutes detailed below caused Millicent Nartey to suffer reduced consciousness and speech abilities; congestive heart failure; paralysis (due to lack of oxygen to the brain); and death per the 8/16/16 brain death test at Franciscan Health.**

1. **EMTALA VIOLATION by Franciscan Health ICU on 8/4/16** per their failure to complete a thorough assessment of Millicent Nartey's emergency medical condition.

    Millicent Nartey was brought to Franciscan Health for her reported weakness on the right side of her body. Mom's symptoms in ER were severe enough to warrant a stroke alert in the ER and have the ER team note to complete a MRI after admission as part of her initial assessment if her symptoms persisted.

    Yet, on 8/4/16, Franciscan Health's ICU team failed to comply with EMTALA & their own ER team's instructions because they completed a second CT scan instead of the required MRI which would have produced detailed pictures of the organ, soft tissues, bone and other internal body structures in Millicent's head and, therefore, led to a more accurate diagnosis of Millicent's emergency medical condition.

    Millicent and the family was told that the 8/4/16 CT scan was "inconclusive" and that she was being kept in Franciscan Health's Intensive Care Unit to address the original emergency medical condition of "hypertensive emergency" & "altered mental state."

2. **Violation Federal Statute re: Discharge Planning & Condition of Participation (42 CFR 482.43)** On 8/4/16, Millicent stated in front of her daughters and a nurse that she didn't feel she was getting any better so she wanted to leave the hospital to either go home or find care elsewhere. Franciscan Health ICU team stated that it was "unlawful" for the hospital to release Millicent before her condition was stable. Mom sobbed in despair and her daughters did our best to console her.

    Despite mom's obvious distress and the verbal requests of Millicent, her husband/power of attorney, and her present family members, not one Franciscan Health staff member - not the nurse on duty, the resident doctors, the attending physician, nor Millicent's case manager - returned to the room complete their legally-required healthcare duties. Franciscan Health:
    (i)  Failed on 8/4/16 to advise the family of Millicent's right to request to discharge against medical advice & present a written release of responsibility the results of said discharge along with options for continuing care outside the hospital.
    (ii) Failed on 8/4/16 to discuss or present their written <u>discharge planning</u> policies and procedures and a specific discharge plan for Millicent Nartey as a person with stubborn <u>hypertension and high cholesterol</u>. Both the initial and any revised discharge plans were to include a written list of post-hospital extended care service options, local home health agencies and/or skilled nursing facilities. (Nothing received or discussed.)
    (iii) Failed on 8/4/16 to discuss or present Franciscan Health's written hospital transfer policy detailing the difference in procedure for a patient-initiated transfer vs. a hospital-initiated transfer.

**United States District Court for the Northern District of Illinois: Eastern Division**
Attachment for extended response to item 10 on filing for Nartey vs. Franciscan Health
Plaintiff: Isabella M. Nartey – Phone: 312.725.3534 – Email: ourmillicent@gmail.com

> (iv) Failed on 8/5/16 to present their written discharge planning policies and procedures and a specific discharge plan for Millicent Nartey as a survivor of <u>ischemic stroke</u>. Both the initial and any revised discharge plans were to include a written list of post-hospital extended care service options, local home health agencies and/or skilled nursing facilities. (Nothing received or discussed.)
> (v) Failed to transfer or refer patient (Millicent Nartey) to the most appropriate facility for follow-up and ancillary care, both when stroke was suspected and once it was diagnosed. (Note: In this case, a primary stroke center or an advanced primary stroke center with rehabilitation services on site would have been most appropriate, but such options were never discussed.)

3. **EMTALA VIOLATION by Franciscan Health ICU** per their failure to secure adequate medical care for Millicent Nartey's 8/5/16 emergency medical condition of ischemic stroke. Since Franciscan Health was not designated as a primary stroke center at the time of Millicent's visit, once her emergency medical condition was recognized as an ischemic stroke Franciscan Health was under legal obligation to comply with both the federally mandated EMTALA & IL statute regarding stroke patients by initiating Millicent's transfer to a primary stroke center. There were several primary stroke centers and once advanced primary stroke center within 17-90 minutes (driving distance) of Franciscan Health.

The hospital transfer would have allowed Millicent Nartey to receive life-saving care at a facility with the resources and surgical expertise to stabilize mom's condition & prevent further damage from her ischemic stroke via carotid endarterectomy or any one of the surgeries documented to successfully prevent/address ischemic stroke in patients with 70 to 99 percent blockage in the carotid artery.

4. **Violation of 18 U.S. Code 1035. (False statements relating to health care matters.)**
When the MRI was finally ordered on 8/5/16, it revealed an ischemic stroke. Millicent and her family were not informed that her "altered mental state" was actually a stroke until the morning of 8/6/16. (Note: Millicent had been reportedly overdosed on anesthesia on 8/5/16 & had not yet regained consciousness on 8/6/16 so the MRI results were only given to her family.)

The Franciscan Health neurologist on duty misinformed the family that the location of Millicent's plaque buildup dictated that the best course of care was to "wait and see" if Millicent would "pull through" and finally respond to the hospital's protocol for hypertensive emergency.

Again the family inquired about a hospital transfer and we were told that Millicent was getting the same quality care at Franciscan Health that she would've gotten anywhere else so it was "best" to "keep her comfortable" and avoid the inconviences of a hospital transfer.

**United States District Court for the Northern District of Illinois: Eastern Division**
Attachment for extended response to item 10 on filing for Nartey vs. Franciscan Health
Plaintiff: Isabella M. Nartey – Phone: 312.725.3534 – Email: ourmillicent@gmail.com

The family now knows that the information delivered by several members of the 8/6/16 Franciscan Health team was both false and misleading because in addition to the federal statute requiring hospital transfers for emergency conditions, Illinois also has a statue mandating the transfer of stroke patients to primary stroke centers due to the documented decrease in mortality rates and increase in post-stroke quality of life for stroke patients treated at these centers. As a registered acute stroke response hospital, all Franciscan Health staff can be expected to be knowledgeable of both the hospital's protocol and the state and federal statutes that impact their ability to delivery care.

5. **Franciscan Health ICU's Violation of EMTALA requirement for admitting hospitals to transfer** any patients who have an emergency medical condition they are unable to stabilize after admission.

Even though Millicent Nartey was misdiagnosed with "hypertensive emergency" instead of "hypertension & stroke risk due to severe coronary heart disease," the tests ordered by the ICU team revealed Millicent's additional health complications and provided insight as to why Franciscan Health's "hypertensive emergency" protocol had been unable to stabilize mom and bring her into recovery.

As previously mentioned, when MRI was finally ordered on 8/5/16, it revealed an ischemic stroke. Not only were Millicent and her family were not informed that her "altered mental state" was actually a stroke until the morning of 8/6/16, the neurologist on duty informed the family that they had no care options beyond Franciscan Health. Resident doctors and the nurse team on duty offered none of the legally required options when the family inquired further.

Franciscan Health's ICU team failed to comply with EMTALA both on 8/4/16 – when they failed to initiate hospital transfer once the hospital's ICU was unable to reduce Millicent Nartey's blood pressure & stroke risk with the drugs/care plan available – and on 8/5/16, when the ischemic stroke was revealed via Franciscan Health's MRI.

It was clear that Millicent Nartey was still at high risk for stroke on 8/4/16, Franciscan Health was legally obligated to transfer her to a primary stroke center which would have had the drugs, surgical team, & neurological / cardiovascular expertise on hand to both stabilize her blood pressure & prevent/address stroke. They failed to comply with EM.

6. **EMTALA VIOLATION by Franciscan Health re: failed transfer request**
Errors in Millicent Nartey's initial diagnosis and subsequent misdiagnosis (ex: "hypertensive emergency" vs. "ischemic stroke" may have influenced the receiving hospitals to view the 8/12/16 (& subsequent) patient-initiated transfer requests submitted by Franciscan Health as inconsequential / not life-threatening.

However, the receiving hospital always has the option to file a complaint against the admitting hospital if their own assessments reveal that the transfer was unnecessary or inappropriate.

**United States District Court for the Northern District of Illinois: Eastern Division**
Attachment for extended response to item 10 on filing for Nartey vs. Franciscan Health
Plaintiff: Isabella M. Nartey – Phone: 312.725.3534 – Email: ourmillicent@gmail.com

While Franciscan Health Medical Records note that Millicent Nartey's transfer request was denied by more than one location "based on insurance reasons," per EMTALA, it is the duty of the admitting hospital to ensure a successful transfer for a patient – regardless of the patient's method of payment or ability to pay – if that patient in need of advanced or life-saving care.

Franciscan Health ICU violated this portion of EMTALA both by not reminding the receiving hospital(s) of (1) their duty to accept Millicent since their facility provided the advanced care Millicent urgently needed and (2) their right to contest the appropriateness of the transfer once Millicent had been accepted and stabilized. Franciscan Health documented their own violation of this portion of EMTALA in Millicent Nartey's official medical records.

7. **EMTALA VIOLATION against both Franciscan Health and receiving hospitals per unlawful denial of transfer.** Per this federal statute, it is unlawful to deny a transfer request based on the patient's ability to pay, based on the patient's method of payment, and based on the suspicion that the patient does not need to be transferred to receive appropriate care for reported conditions.

    The receiving hospitals were in violation of EMTALA denying Millicent Nartey "for insurance reasons." Franciscan Health was in violation of EMTALA in allowing the receiving hospitals to refuse transfer based on Millicent Nartey's method of payment and perceived ability to pay.

8. **EMTALA VIOLATION of transfer standards by Franciscan Health ICU**
    Even though Franciscan Health was at least 8 days "late" in presenting the option for Millicent Nartey's hospital transfer, when they finally did offer it, they violated EMTALA standards again by requiring the family to identify the appropriate hospital for Millicent Nartey to be transferred to in order to receive advanced care. The family identified top Chicago hospitals – University of Chicago, Loyola, and Stroger Hospital – but did not know to specifically seek out primary stroke centers and advanced primary stroke centers.

    Per EMTALA, it is the responsibility of the admitting hospital – not the patient or her family – to identify the best facility for advanced care, especially in cases when the patient is experiencing or at high risk for experiencing rapid or significant "clinical deterorition as Franciscan Health stated in Millicent Nartey's official medical records. Franciscan Health was legally obligated to both identify the best hospitals to receive Millicent and to ensure the hospital transfer was completed once it had been initiated.

9. **EMTALA Violation by Franciscan Health <u>Radiology</u>** department for failing to request hospital transfer to primary stroke center. Upon reviewing the results of Millicent Nartey's imaging tests (which revealed her ischemic stroke and her "moderate to severe occlusion" in her left carotid artery) they failed to recognize/treat Millicent Nartey's

**United States District Court for the Northern District of Illinois: Eastern Division**
Attachment for extended response to item 10 on filing for Nartey vs. Franciscan Health
Plaintiff: Isabella M. Nartey – Phone: 312.725.3534 – Email: ourmillicent@gmail.com

> condition as life-threatening and further failed to initiate transfer to a higher level care facility that could perform the carotid endarterectomy or any one of the surgeries documented to successfully prevent/address ischemic stroke in patients with 70 to 99 percent blockage in the carotid artery.

10. **EMTALA Violation** against Franciscan Health **Cardiology** department because upon reviewing the results of Millicent Nartey's tests which revealed elevated troponin & creatinine levels along with the plaque build-up in her enlarged heart, they failed to recognize/re-diagnose Millicent Nartey's "hypertensive emergency" as life-threatening congestive heart failure due to "severe near Occlusive Coronary Artery Disease w/ near Occlusive Atherosclerosis of Left Anterior Descending Coronary Artery near the Bifurcation." (Note: Millicent Nartey's final diagnosis was only obtained via the autopsy.)

    Even though Franciscan Health Cardiology documented several heart health concerns in her official medical record, they:
    (i) never communicated the severity of Millicent's condition to her or her family and
    (ii) violated EMTALA by failing to initiate transfer to a higher level care facility that could perform any one of the surgeries documented to successfully manage advanced heart disease thereby avoiding stroke and prolonging life by an average of 10+ years.

11. EMTALA Violation by Franciscan Health <u>Neurology</u> department for improper <u>initial assessment during the first 24-hours</u>. Franciscan's Neurology team failed to properly assess Millicent Nartey's condition with an MRI (as their own ER team instructed) when all previous assessment tests indicated but could not confirm stroke. Neurology also had access to Millicent's charts/records which showed that her "stroke level blood pressure" was unresponsive to the hospital's hypertensive emergency plan.

12. **EMTALA Violation by Franciscan Health Neurology** department for failing to initiate & complete transfer to an (advanced) primary stroke center with life-saving surgical capabilities once an MRI confirmed that Millicent Nartey had in fact had an ischemic stroke due to the blockages revealed by imaging tests.

13. **Violation of Title VI of the Civil Rights Act of 1964** - Patients right to translator. English is Millicent Nartey's third language even though she's an American citizen. Her family informed the Franciscan Health ICU team of her need to have English spoken slowly and of our availability to translate if she seemed to have trouble comprehending. By withholding information and providing erroneous or partial information, Franciscan Health denied the family an opportunity to both communicate Millicent's condition and care options in her preferred language and to have Millicent be an informed participant in her care plan and options. This violated Millicent Nartey's civil right as per Title VI.