**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ISABELLA NARTEY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-5327 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| FRANCISCAN HEALTH, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Isabella Nartey (the "Plaintiff") filed a twenty-five count Corrected Amended

Complaint against Franciscan Health alleging various claims related to the medical care and

treatment of her mother, Millicent Nartey ("Nartey"). Franciscan moves to dismiss Nartey's

Corrected Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court

held oral argument on June 5, 2019. For the reasons outlined below, Franciscan's Motion to

Dismiss [37] is granted.

**Background**

On August 3, 2016, Nartey was transported via ambulance to the emergency department at

Franciscan after experiencing weakness and an elevated blood pressure. Plaintiff and her other

family members informed Franciscan that Nartey had a history of high blood pressure and opted

not to control it with prescribed medications due to adverse side effects. Franciscan's emergency

medical team screened Nartey and initiated treatment upon her arrival in the emergency room. The

emergency medical team identified that Nartey's potassium levels were low, her heart displayed

evident damage, and her current condition mandated additional diagnostic tests. Nartey was

subsequently admitted to the intensive care unit at Franciscan for further tests and overnight

1

observation due to concern for Nartey's cardiac condition and potential stroke. Nartey's native

language was the West African language TWI. Plaintiff informed a nurse in the Franciscan intensive

care unit that although English was not her native language, Nartey "understood and could converse

in English, but … the Franciscan medical team may need to speak more slowly and calmly." (Dkt.

33-1 at ¶ 28(e).) Indeed, Nartey at one point requested to leave Franciscan in English. Plaintiff also

indicated that she and other family members were available to translate as the need arose.

Although a CT scan and several other exams did not show any signs of stroke, Nartey's

medical providers were concerned that she may be "trending towards a stroke" based on

neurological exams. (Dkt. 33-1 at ¶ 35.) Plaintiff and Nartey's other family members declined

certain other medical care, such as the placement of a "trach tube," and inquired about discharging

Nartey. (*Id.* at ¶¶ 40–41.) Plaintiff was informed that due to the possibility of Nartey suffering a

stroke Nartey could not be discharged before additional testing was completed, including a swallow

test, additional CT scan, and MRI. Nartey's husband was contacted as power of attorney for Nartey

prior to performing additional tests and the MRI.

After being informed that the MRI showed signs of severe ischemic stroke, Plaintiff inquired

about transferring her mother to another facility. Plaintiff alleges that the Franciscan neurologist

told her that there was no need to inconvenience Nartey with a hospital transfer. Another

Franciscan representative told Plaintiff that a transfer was unlikely due to Nartey's care plan.

Plaintiff subsequently provided paperwork seeking to transfer Nartey to the University of Chicago,

Loyola University, and other hospitals, but the requests to transfer were denied by the other facilities

due to financial and insurance reasons. Although an apnea test was delayed following Plaintiff's

request (so that Nartey's husband could be present when the results were known), Nartey was found

to be clinically brain dead on August 17, 2016, and subsequently passed away. Plaintiff requested in

writing and received Nartey's medical records. In January 2019, Plaintiff discovered that Franciscan omitted or excluded various "key documents" from Nartey's medical records.

Plaintiff alleges claims pursuant to Emergency Medical Treatment and Active Labor Act ("EMTALA"), Title VI of the Civil Rights Act of 1964, and fraudulent concealment of medical negligence allegedly arising from the medical treatment provided to Nartey in August 2016 at Franciscan. Franciscan now moves to dismiss the Corrected Amended Complaint for failure to state a claim.

**Legal Standard**

When considering a Rule 12(b)(6) motion, the court accepts all of the plaintiff's allegations as true and views them "in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). A complaint must contain allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Pro se motions, particularly, should be construed liberally. *Otis v. Demarasse*, 886 F.3d 639, 644 (7th Cir. 2018). However, "even pro se litigants must follow rules of civil procedure." *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006). The plaintiff does not need to plead particularized facts, but the allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

**Analysis**

Franciscan first contends that Nartey fails to state a claim for violations of EMTALA because the purpose of EMTALA is to protect patients from being denied emergency treatment due to an inability to pay and Plaintiff alleges that Nartey was examined and screened in compliance with the Act. Plaintiff responds that Franciscan violated its EMTALA duties to screen, treat, stabilize, and transfer Nartey by failing to comply with national and community standards of care. Where an

emergency condition exists, "the patient may not be transferred to another hospital or discharged until he or she has received stabilizing treatment." *Curry v. Advocate Bethany Hosp.*, 204 F. App'x 553, 556 (7th Cir. 2006) (citing 42 U.S.C. § 1395dd).

A plaintiff can plead herself out of court by pleading facts that undermine the allegations in her complaint. *Curry*, 204 F. App'x at 556. Plaintiff has done that with respect to her EMTALA claims. She alleges that Franciscan screened Nartey and initiated treatment upon her arrival at the emergency room. Specifically, after an hour in the emergency room, the Franciscan emergency medical team identified Nartey's low potassium levels and existing damage on her heart and determined additional diagnostic tests that it would perform. Due to concern for Nartey's cardiac condition and potential stroke, Franciscan subsequently admitted Nartey to its intensive care unit for further tests and overnight observation. Thus, by pleading that Franciscan determined that Nartey had an emergency medical condition, Plaintiff necessarily asserts that Nartey received screening as required by EMTALA. *See Woessner v. Freeport Mem'l Hosp.*, No. 91 C 20005, 1992 WL 88302, at *3 (N.D. Ill. Apr. 24, 1992) (Reinhard, J.); 42 U.S.C. § 1395dd(b).

Plaintiff further alleges that Franciscan failed to stabilize or transfer Nartey as required by EMTALA. Here, too, Plaintiff has alleged facts that undermine these allegations. Plaintiff alleges that Nartey's medical providers conducted neurological exams that indicated she may be "trending towards a stroke" and recommended placing a "trach tube," which Plaintiff declined on behalf of Nartey. Due to the possibility of Nartey suffering a stroke, Franciscan informed Plaintiff that Nartey could not be discharged before additional testing was completed, including a swallow test, CT scan, and MRI. Franciscan also informed Plaintiff that transferring Nartey to another hospital likely would not be possible due to Nartey's care plan. Still, Plaintiff requested that Franciscan transfer Nartey to another medical facility. Franciscan could not transfer Nartey because the requests were denied by the other facilities due financial and insurance reasons. A hospital cannot

legally transfer a patient to a facility that had not agreed to accept her transfer. *See* 42 U.S.C. §

13955dd(c)(2). Following the denials, Franciscan continued to provide care to Nartey.

EMTALA does not require that the treatment satisfy any national or community standard of

care, and Franciscan's actions demonstrate that it continued to treat Nartey. *See Smith v. St. James*

*Hosp. & Health Centers*, No. 02 C 2953, 2003 WL 174195, at *3 (N.D. Ill. Jan. 27, 2003) (Andersen,

J.). "EMTALA is not a federal malpractice statute," so even if Franciscan may have misdiagnosed

Nartey, EMTALA does not provide an avenue to recover for her unsuccessful treatment. *Curry*, 204

F. App'x at 556. Thus, Plaintiff's allegations for failure to stabilize also fail because Franciscan

provided ongoing care to Nartey, beginning with her admission to the hospital. The Court dismisses

Counts I–IXX.

Next, Franciscan asserts that Plaintiff fails to set forth a claim under Title VI of the Civil

Rights Act of 1964, 42 U.S.C. § 2000d, because Plaintiff only includes conclusory allegations without

any facts supporting that Nartey was intentionally discriminated against based on her language

proficiency. Plaintiff responds that Franciscan acknowledged Nartey's limited English proficiency,

but failed to assess her understanding and did not accommodate Nartey. Title VI provides that

"[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded

from participation in, be denied the benefits of, or be subjected to discrimination under any program

or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To receive protection, a

plaintiff must allege proof of intentional discrimination. *Dunnet Bay Const. Co. v. Borggren*, 799 F.3d

676, 697 (7th Cir. 2015).

Here, Plaintiff has once more alleged facts contrary to her allegations that Nartey was

intentionally discriminated against based on her language proficiency. Although English was not

Nartey's native language, Plaintiff alleges that Nartey "understood and could converse in English"

and that Nartey asked to leave the hospital in English. Further, Plaintiff alleges that she and other

family members could translate for Franciscan staff members, if needed. Together these allegations demonstrate that Nartey was able to communicate with her care providers at Franciscan. The Corrected Amended Complaint fails to allege plausible factual allegations of intentional discrimination. The Court dismisses Counts XX–XXII.

Finally, Franciscan contends that Plaintiff's claims for fraudulent concealment are impermissibly duplicative, fail to meet the requirements of a state law medical negligence claim, and fail to state a claim. Nartey responds that the Corrected Amended Complaint states the circumstances constituting fraud with particularity and that she is not alleging that Nartey's damages arose through medical malpractice.

Claims XXIII–XXV each allege facts seeking damages for death by reason of hospital malpractice. Illinois law requires a party asserting a claim for medical malpractice to file an affidavit declaring that the affiant reviewed the facts of the case with a health professional and a report from the professional concluding that there is a meritorious claim of medical neglect or stating an acceptable reason why such an opinion and report could not be obtained. *See* 735 ILCS 5/2-622(a); *see also Williams v. Erickson*, 21 F. Supp. 3d 957, 958 (N.D. Ill. 2013) (Kennelly, J.). The statute requires that "failure to file a certificate required by this Section shall be grounds for dismissal." 735 ILCS 5/2-622(g); *see also Hahn v. Walsh*, 762 F.3d 617, 628–29 (7th Cir. 2014). No version of the complaint has contained the affidavit, the report, or any explanation regarding why it was absent, although the Corrected Amended Complaint states that Plaintiff "understands that Illinois courts required a medical affidavit of merit to bring forth claims of negligence, medical malpractice, and wrongful death." (Dkt. 33-1 at 62.) Plaintiff has not filed the certificate, and Counts XXIII–XXV are dismissed.

Even if Plaintiff could survive the state affidavit requirement, her complaint fails to state a claim for fraudulent concealment. To allege fraudulent concealment, Plaintiff must allege: (1) the

concealment of a material fact; (2) the concealment was intended to induce a false belief, under circumstances creating a duty to speak; (3) the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the silence as a representation that the fact did not exist; (4) the concealed information was such that the injured party would have acted differently had she been aware of it; and (5) that reliance by the person from whom the fact was concealed led to her injury. *Taylor v. Feinberg*, No. 08-CV-5588, 2009 WL 3156747, at \*6 (N.D. Ill. Sept. 28, 2009) (Lefkow, J.) (citing *Schrager v. N. Cmty. Bank*, 328 Ill. App. 3d 696, 706–07, 767 N.E.2d 376 (1st Dist. 2002)).

Plaintiff alleges that she obtained incomplete medical records for Nartey, but does not allege that any omission from the medical records was intended to cover up actions taken during Nartey's medical treatment at Franciscan. Further, Plaintiff alleges that she discovered the omitted documents herself, demonstrating that she was able to discover the "truth" through a reasonable inspection. Counts XXIII–XXV also fail to state a claim.

**Conclusion**

Based on the foregoing, Defendant's Motion to Dismiss [37] is granted. If Plaintiff believes that she can cure the deficiencies in her Corrected Amended Complaint, she may file amended papers with the Court within 30 days of the date of this Order.


IT IS SO ORDERED.


Date: 7/11/2019

Entered: _____

SHARON JOHNSON COLEMAN
United States District Court Judge

7